Napton, judge,
dissenting.
The question in this case is simply what is a Neto Madrid location, within the meaning of the act of our legislature regulating the action ef ejectment. That act declares that an action of ejectment may be *190 maintained on a New Madrid location. The legislature has not compelled any man to sue for the possession of his land, no matter by what title he may claim it, but they have provided that if he fails to do so for a specified length of time, whilst it is in the adverse possession of another, his action shall in that event be barred, an adverse possession will commence running against a title whenever if is of such a character that an action of ejectment may be maintained upon it.
I take it to be beyond all question that the legislature of this State have the power to declare what incipient title, emanating from the federal government, shall authorize an action of ejectment. They may authorize an action to be maintained upon a mere survey, or upon a pre-emption right, and they have accordingly done so. They have also authorized this action to be maintained upon a New Madrid location, and whether this location was understood to mean the first, second, third or final step taken in the procurement of title, is a question for the courts of this state to determine.
That the question has been practically settled in the courts of this State for twenty years and upwards, is conceded. That no difference of opinion has been entertained either in the courts or at the bar, or among those of our citizens who have been concerned in these titles, in relation to the meaning of a New Madrid location, is beyond all controversy. There is just as little doubt in my opinion, that the congress which passed the act of Feb. 17, 1815, and their successors in passing subsequent enactments on the same subject, understood a New Madrid location in the same sense in which it has been received and acted upon in this State. Let us look for a moment at these acts.
The second section of the act of 1815 provides that the recorder of land titles shall issue a certificate to the claimant of the injured land in New Madrid. “Upon such certificate being issued, and the location made, on the application of the claimants, by the principal deputy surveyor,” the surveyor is directed to “cause a survey thereof to be made, and to return a plat of each location made to the recorder, together with a notice in writing, designating the tract or tracts thus located and the name of the claimant.”
This plat and notice the recorder is directed to record in his office. Can language be more explicit than this ? The location is the first step in the title, that location the surveyor is directed to survey, and of that survey he is directed to make a plat. He is then directed to return to the recorder’s office the plat of the location made, and the notice in writing which designates the. tract thus located. Here the location is *191 spoken of in terms as an act which had already been done, the evidences of which were directed to be filed in the proper office so that they could be communicated through the proper channel to the heads of the land department at Washington.
But the act of April, 1822, is an interpretation by congress of the ■meaning of a location which cannot be misunderstood. That act was partly for the purpose of giving validity to locations supposed to be defective or illegal, but it also made provision for subsequent locations, and declared that locators of warrants issued under the act of 1815, should thereafter in locating them, conform as near as practicable to the lines of the public survey, and further declared, that all such warrants should be located within one year after the passage of that act, in default whereof they were declared null and void. Now if the location was the act of the surveyor in making his return to the recorder, or the act of the recorder in filing this return, it follows that congress were compelling the locators to do an act, over which they had no control, utterly out of their power, under the penalty of losing their titles ! And what a commentary do the facts of the present case present upon such a construction of this law. Here the location, or the entry was made in 1818, and the surveyor general neglected to make any return of the plat of survey and the notice of location, until 1833. A lapse of more than fourteen years occurred during which the locator had no control whatever over the proceedings in the surveyor’s office, or in the recorder’s office. In short, if the location consisted of the return of it into the recorder’s office, is was a mere nullity so far as this law is concerned. But it is obvious that congress designed no such rank injustice j that they understood a location to be the act of the locator, and not a matter depending upon the amount of business in the offices of the surveyor or recorder of land titles.
The fact that a location might be improperly made, that it might be placed upon salt springs, or lead mines, or any other reserved land, does not prove that a valid and legal location was not an appropriation of the land. In all locations, as well as in all other forms of entering or purchasing public lands. Congress has provided for various subsequent steps to be taken in the offices connected with or subordinate to the general land department. During the progress of these steps and previous to the emanation of the patent, an illegal incipient title may be arrested, but where the incipient title is not arrested, but is followed by the other steps necessary to perfect the title, the question as to the time when the title commences is not affected by this reservation of power *192 by congress. Our statute authorizes an action of ejectment to be maintained upon an entry with the register and receiver, and the receiver’s receipt is all the evidence which the purchaser gets until the' emanation of the patent, and upon this evidence our courts have uniformly acted.
But there are various subsequent proceedings, both in the land offices here and in the general land office at Washington, during which this' title may be examined, and if the facts warrant, may be canceled. This reserved power does not however affect the general proposition that the purchaser’s title commences with his entry.
It is said that the only evidence of location acted on by the commissioner of the general land office, is the plat of survey and notice returned by the surveyor. This is undoubtedly true, and the act itself makes this provision. The office of recorder of land titles is the office through which information is conveyed to the general land office. The' recorder transmits his report of locations to that office, and the survey- or is required to make his report to the recorder. The commissioner of the land office acts upon the report of the recorder of land titles,, and the recorder of land titles acts upon the report of the surveyor. This is the routine by which the heads of the land department at Washington are advised of the various grades of title and the action of the subordinate officers upon them. But a title is one thing, and the evidence of that title another. We are speaking now of equitable titles,, which originate without deed and without patent. How does this fact,, that the commissioner of the general land office acts only upon the return made by the surveyor to the recorder’s office, in issuing or withholding a patent, affect the question as to the time of the location ? The same routine or a similar one is followed in the case of an ordinary entry. The general principle is that where there are several acts necessary to pass an estate the original act is preferred and the subsequent acts have relation to this. Why should the plat of survey and notice returned to the recorder be selected as the act appropriating land, in preference to any other intermediate step in consummating the title. Why not take the survey which is a precedent act, or the patent certificate which is a subsequent one, all these acts, the location, the survey, the return of that survey and location to the recorder, the return of the recorder to the general land office, the patent certificate issued by the recorder and the return of that certificate to the general land office, are necessary to perfect the title.
It is said, however, that the supreme court of the United States in *193 the case of Bagnell vs. Broderick, (13 Peters 447) have settled this question. I do not think so. That was a contest between the holders of the legal and equitable title. There was but one title. The location was made in the name of By-ne, and the return of the plat and location was in the name of John Robertson. The sole question was, whether thosé holding under Byrne could recover against the owner of The patent. This question was discussed by the court in two aspects, sand it was the opinion 'of the court that the legal title must prevail, although the location had been in the name of Byrne, and further that although the location was made by Byrne, yet that the return of the surveyor of the plat of survey and notice having been in the name of Robertson, that return constituted the first Appropriation of the lands-.
It seems to have been the opinion of the court that the return of the plat of survey and location constituted a higher order of title than the location itself, because it was the evidence upon which the department At Washington acted, and consequently in a contest between the location and the return, the latter must prevail. It must be admitted also that in deciding this point, which however was not essential to the case, there are intimations from the learned judge who delivered the opinion, that the return of the location to the recorder’s office Constituted the location itself; in other words, was the first Step in the title. On this point I hávé already given my views. I should very reluctantly venture An opinion which differed from the deliberate judgment of the supreme court Of the United State's, but I am not prepared to believe that that court would hold, under >our statute of limitation, that an adverse possession will not run against a New Madrid location, until the return of That location has been made into the recorder’s office. However this may be, I am called upon to construe a law of this State, which says That an Action of ejectment may be maintained upon a New Madrid location. I am called upon to say what our legislature intended by this •New Madrid location, And as I cannot doubt their intention and meaning, I am governed by their action and not by the decision of any other court, whose province does not embracé the power of giving an anThoritive construction to laws of this State.
I am in favor of reversing the judgment;